FILED'10 AUG 19 14:01USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JACOB BARRETT,

    Petitioner,

v.

MAX WILLIAMS, et al.,

    Respondents.

Civil No. 08-484-PA

OPINION AND ORDER

Anthony D. Bornstein
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Kristen E. Boyd
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

PANNER, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he challenges the legality of his placement in the Intensive Management Unit within the Oregon Department of Corrections. For the reasons that follow, the Petition for Writ of Habeas Corpus (#3) is denied.

## BACKGROUND

While serving his prison sentence a the Two Rivers Correctional Institution, petitioner was charged with Assault I and Disobedience of an Order I. Respondent's Exhibit 103. The charges stemmed from a fight with another inmate where petitioner also struck a corrections officer who attempted to intervene. Petitioner declined to attend his disciplinary hearing. *Id.* The hearings officer found petitioner guilty of the charges and sanctioned him to 180 days in the Disciplinary Segregation Unit ("DSU"), a fine of $200, 28 days loss of privileges upon release from DSU, and 309 days loss of good time should he become eligible for such good time. *Id.*

Petitioner was later transferred to two other prisons within the Oregon Department of Corrections and placed in the Intensive Management Unit ("IMU"), a housing unit typically reserved for prisoners "who pose security risks because of possible escape, chronic misconduct, or activity involving other prisoners (such as membership in prison gangs)." *Id.* Petitioner was housed in IMU

2 - OPINION AND ORDER

because they believed that he was "involved in gang violence in prison, and petitioner admits both gang involvement and fighting. In an effort to deter further misconduct, officials threatened to send petitioner to IMU if his behavior did not improve. Petitioner continued to fight and otherwise misbehave, and prison officials then placed him in IMU twice." *Barrett v. Belleque*, 3444 Or. 91, 95, 176 P.3d 1272 (2008).

Petitioner filed a state habeas action challenging his placement in IMU as both oppressive and discriminatory. The trial court dismissed the case upon its own motion when it determined that oppressive conditions and allegations of discrimination were not actionable in an Oregon habeas corpus case.[1] Respondent's Exhibit 105.

Petitioner took a direct appeal, and the Oregon Court of Appeals affirmed the habeas trial court's decision in a written opinion, albeit upon different grounds. Specifically, the appellate court determined that because petitioner had an alternative remedy in the form of a 42 U.S.C. § 1983 action, the state habeas corpus remedy was not available to him. *Barrett*, 344 Or. at 93.

Petitioner next sought review in Oregon's Supreme Court, and review was allowed. Upon review, the Oregon Supreme Court affirmed

---

[1] Although the trial court later allowed reconsideration, it adhered to its judgment.

3 - OPINION AND ORDER

the Oregon Court of Appeals' decision, but did so by reaching the merits of petitioner's claim. *Id.*

Petitioner filed this federal habeas corpus action on April 21, 2008 raising a variety of claims. In petitioner's supporting memorandum filed by his appointed attorney, petitioner pursues the following claims:

1. Petitioner was denied his right to due process of law under the Fourteenth Amendment in that IMU is a "punishment unit" and petitioner's placement in IMU necessitated certain procedural protections including notice, the right to be heard, the right to questions witnesses, and to have documentary and physical evidence and a prompt hearing; and

2. Petitioner's placement in IMU lacks the requisite "some evidence" to support it, and therefore violates due process of law.

Respondent asks the court to deny relief on the Petition because: (1) some of the claims in the *pro se* Petition are not argued in petitioner's supporting memorandum; (2) most of the claims raised in the *pro se* Petition were not fairly presented to Oregon's state courts and are now procedurally defaulted; and (3) both of petitioner's argued grounds for relief lack merit.

## DISCUSSION

### I. Unargued Claims

There are a number of claims in the *pro se* Petition which petitioner has not briefed. Petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the

burden of proving his claims); *see also Renderos v. Ryan*, 469 F.3d 788, 800 (9th Cir. 2006) (counsel for petitioner waived federal habeas corpus claims where he did not attempt to set forth the legal standards for the challenge or attempt to meet them).

## II. Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Edwards v.*

5 - OPINION AND ORDER

*Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

In this case, petitioner did not present the Oregon Supreme Court with any claim pertaining to the sufficiency of the evidence claim he raises in Ground Two. Petitioner presented three questions for the Oregon Supreme Court's consideration concerning the propriety of the state habeas corpus remedy in his case, and one due process claim that placement in IMU requires notice and an opportunity to be heard. Respondent's Exhibit 114, pp. 1-2. Accordingly, the only claim petitioner fairly presented to Oregon's highest court was whether the Due Process Clause of the U.S. Constitution requires notice and an opportunity to be heard prior to an inmate's placement in IMU, a claim which mirrors the Ground One claim he argues to this court.

## III. **The Merits**

### A.   **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in

6 - OPINION AND ORDER

a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

///

7 - OPINION AND ORDER

B.   **Analysis**

According to petitioner, placement in IMU constitutes a form of punishment, therefore the Fourteenth Amendment required prison officials to afford certain procedural protections such as notice and a right to be heard before placing him in IMU. The Oregon Supreme Court carefully analyzed U.S. Supreme Court precedent in addressing this claim:

> The burden that petitioner must meet is a heavy one. First, because petitioner does not challenge his underlying convictions or imprisonment, he must show that placement in IMU is a further restraint on his liberty that "imposes atypical and significant hardships in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Second, petitioner must show that the Due Process Clause requires that the state provide him a hearing before being placed in IMU and that the procedures afforded him by the state to challenge his IMU placement are constitutionally inadequate. *See Wilkinson v. Austin*, 545 U.S. 209, 224, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (once liberty interest is established, court considers "what process is due").
>
> As to the first point, petitioner argues that his privileges are curtailed to such an extent in IMU that placement there is punishment and constitutes further deprivation of liberty:
>
>> "In IMU I am denied access to a phone, I am denied my property, denied outdoor recreation, denied visits with nonfamily, denied canteen, I'm not permitted to leave my cell, I am not permitted educational or learning material as well as a myriad of other denied privileges and rights. This denial is based on punishment and not security concerns."
>
> Accordingly, petitioner contends that he is entitled to a hearing before placement in IMU:

8 - OPINION AND ORDER

> "Because IMU is a punishment unit my placement in IMU denies me Due Process rights in a hearing, such as a notice in accordance with due process, the right to be heard, the right to question witnesses, to have documentary and physical evidence, and a prompt hearing violates my constitutional rights[.]"

The state responds that the United States Supreme Court has held that placement of a prisoner in disciplinary segregation does not "impose [ ] atypical and significant hardships in relation to the ordinary incidents of prison life," and therefore does not implicate a "liberty" interest for due process purposes. *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293. The trial court accepted that argument, and it provided the basis for the trial court's conclusion that petitioner had not stated a claim for relief and for Judge Edmonds's concurring opinion in the Court of Appeals.

*Sandin*, however, involved a 30-day disciplinary sanction, and petitioner argues that placement in IMU is a more significant deprivation of liberty than was involved in *Sandin*. He asserts that IMU placements may last indefinitely and ordinarily are reviewed only every six months. He contends that, at some of the different "levels" of placement within IMU, an inmate is in solitary confinement, allowed out of his cell less than an hour a day, and denied outdoor recreation and visits with nonfamily members. Petitioner argues that those restrictions impose "atypical" and "significant" hardships on an inmate, compared to the normal incidents of prison life and therefore constitute a further deprivation of a liberty interested protected by the Due Process Clause.

Petitioner relies on a United States Supreme Court case decided after *Sandin*, *Wilkinson*, in which the Court considered a challenge to the procedures for assignment to an Ohio "Supermax" prison, where inmates were kept in solitary confinement, required to remain in their cells 23 hours a day, and banned from eligibility for parole. The Supermax placements were for an indefinite period, subject only to an initial 30-day review and annual reviews thereafter. The Court held that placement in the Supermax prison constituted a further deprivation of liberty beyond that experienced by other inmates in the Ohio prison system and therefore implicated a liberty

9 - OPINION AND ORDER

interest protected by the Due Process Clause. 545 U.S. at 223-24, 125 S.Ct. 2384.

From petitioner's allegations and the administrative rules with respect to IMU placement, it is apparent that IMU placement involves a greater restriction on liberty than the 30-day sanction in *Sandin*, but less of a restriction than the solitary confinement in the Ohio Supermax prison at issue in *Wilkinson [v. Austin*, 545 U.S. 209 (2005)]. Inmates placed in IMU are initially assigned to "level two" of four program levels, in which the inmate is permitted two visits a month, canteen items, and educational materials that meet security requirements. Inmates can be demoted to level one, where they are not permitted to have visits, if they engage in behavior that threatens the safe, secure and orderly operation of the IMU. Inmates who have no major rule violations and no more than one minor rule violation for two months at level two are advanced to level three, which allows more visits and other privileges. Similar good behavior for three months leads to advancement to level four and then to review within 30 days for transfer out of IMU. The state therefore asserts that IMU placement (and changes in levels within IMU) is based on inmate behavior and is more fluid and less harsh than Supermax placement. For that reason, the state argues, IMU placement does not infringe any protected liberty interest.

We need not decide, however, whether petitioner's IMU placement deprives him of a protected liberty interest because, even assuming that it does, his claim fails the second part of the test for demonstrating a due process violation. The process required by the Due Process Clause depends on the nature of the individual's interest that is at stake, the risk of an erroneous deprivation of that interest given the procedures used by the state, and the state's interest. *Wilkinson*, 545 U.S. at 224-25, 125 S.Ct. 2384 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In *Wilkinson*, the Court, as noted, held that placement in the Ohio Supermax prison was an infringement of a liberty interest, but also concluded that due process requirements could be satisfied by "informal, nonadversary procedures * * *." *Wilkinson*, 545 U.S. at 229, 125 S.Ct. 2384. The Court in *Wilkinson* indicated that notice of the factual basis for the placement and a fair opportunity for rebuttal were "among the most

10 - OPINION AND ORDER

important procedural mechanisms" to avoid erroneous decisions, *id.* at 226, 125 S.Ct. 2384, but it declined to require Ohio to allow an inmate to call witnesses or to provide "other attributes of an adversary hearing." *Id.* at 228, 125 S.Ct. 2384. Although the Ohio procedures approved in *Wilkinson* included an informal, nonadversary hearing before an inmate was placed in the Supermax prison, nothing in the Court's decision suggested that due process required a hearing before placement. Indeed, the Court in *Wilkinson* cited its earlier decision in *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), as "provid[ing] the appropriate model" for procedures in prisons and as "instructive" for that decision's "discussion of the appropriate level of procedural safeguards." *Wilkinson*, 545 U.S. at 229, 125 S.Ct. 2384.

In *Hewitt*, the Court held that the prison officials who placed the inmate in that case in administrative confinement "were obligated to engage only in an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wished to submit, within a reasonable time after confin[ement]." 459 U.S. at 472, 103 S.Ct. 864 (emphasis added). *See also id.* at 476, 476 n. 8, 103 S.Ct. 864 (due process requires some notice of charges on which administrative segregation is based and opportunity for inmate to present his views; proceeding must occur within reasonable time after transfer).

Oregon provides inmates placed in IMU with procedures to challenge their placement that are similar to those that the Court found sufficient in *Wilkinson* and *Hewitt*. Oregon inmates receive preplacement written decisions regarding their classification and assignment and are provided with notice of their opportunities to seek review. An Oregon inmate can seek administrative review of an IMU placement and submit a statement and other evidence in support of the inmate's position. The inmate initiates administrative review by submitting a request to the administrator of the classification unit, . . . and review is then conducted by the Special Population Management-Inmate Program Committee. . . . Moreover, IMU placements, and changes in the privileges that are granted or denied to IMU inmates, are based on specific criteria, such as the inmate's type of offense, misconduct in prison, affiliation with "security threat

11 - OPINION AND ORDER

gangs," time until release, escape risk, and other factors, thus limiting the chance of erroneous placement decisions. IMU placements, like other custody level determinations, are reviewed every six months.

The state does not provide a formal, preplacement hearing of the kind petitioner seeks before an inmate is placed in IMU or is "demoted" from an initial IMU level two to the more restrictive IMU level one. However, as noted, the Court in *Wilkinson* held that a formal, adversary hearing was not required, and while the Ohio procedures upheld in *Wilkinson* included an informal hearing prior to transfer, the Court did not indicate that a prior hearing was constitutionally mandated. Rather, the Court referred to *Hewitt*, where it had held that notice and an opportunity to submit a written statement within a reasonable period as part of an administrative review after an inmate's transfer to administrative segregation satisfied due process. That procedure is particularly likely to be sufficient to prevent erroneous IMU placement because the criteria for the maximum custody classification that is a prerequisite for IMU placement are specific and generally objective.

In any event, petitioner himself alleges that the state conducted a hearing with respect to the February 2003 fight that led to petitioner's 180-day administrative segregation and also conducted a hearing (which petitioner declined to attend) related to the September 2003 fight that led to his placement for 180 days in a disciplinary segregation unit. The factual issues related to those fights are the primary basis for petitioner's challenge to his IMU placement. In addition to hearings related to two of the fights in which petitioner was involved, the state provided him preplacement notice of the reasons for his IMU placement and an administrative review which permitted him to submit evidence in support of his objection to that placement. Defendant does not challenge the promptness of that review.

For the reasons set forth above, on the facts set forth in the petition and the due process challenges this petitioner makes, we conclude that the petition failed to state a claim for relief and that the trial court

properly dismissed the petition as meritless under ORS 34.370(6) and (7).

*Barrett*, 344 Or. at 103-108. (citations to Oregon Administrative Regulations omitted).

Given this lengthy opinion and its in-depth rationale, the court need not conduct an independent review of the record in this case. A review of the Oregon Supreme Court's opinion in this case reveals that it carefully and accurately reviewed the relevant U.S. Supreme Court precedent and ably applied it to petitioner's case. It reached a decision which is neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the U.S. Supreme Court. Accordingly, petitioner's Ground One claims lacks merit.

Because the existing record in this case is sufficient to resolve this matter, petitioner's request for an evidentiary hearing is denied. *See Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing).

///
///
///
///
///
///
///

13 - OPINION AND ORDER

## CONCLUSION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#3) is DENIED. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this __19__ day of August, 2010.

> Owen M. Panner
> United States District Judge

14 - OPINION AND ORDER